**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MCDOWELL VALLEY VINEYARDS, INC., a California corporation, | No. C-04-0708 SC |
| Plaintiff, | ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING CASE WITHOUT PREJUDICE |
| v. | |
| SABATÉ USA INC., SABATÉ SAS, SABATÉ SA, SABATÉ DIOSOS GROUP SA, and DOES 1 through 100, inclusive, | |
| Defendants. | |

I.  **INTRODUCTION**

McDowell Valley Vineyards, Inc. ("Plaintiff" or "McDowell") brought this action against Sabaté USA Inc., Sabaté SAS, Sabaté SA, Sabaté Diosos Group SA, and Does 1-100 ("Defendants" or "Sabaté")[1] in The Superior Court for the County of Napa, California, alleging causes of action for, among others, breach of contract, breach of express and implied warranties, and fraud. Plaintiff's Complaint at 1 ("Compl.").

Presently before the Court is Defendants' motion for partial summary judgment.  The Court, having reviewed the parties'

---

[1] Sabaté USA, Inc. is a California corporation with its principal place of business in Napa County, California, and is a wholly-owed subsidiary of Sabaté, SAS.  Plaintiff's State Court Complaint at 1-2.  Defendants Sabaté, SAS, Sabaté, SA, Altec, SA, and Sabaté-Diosos Group, SA, are foreign corporations organized under the laws of France.  Id. at 2.

submissions, finds that it lacks subject matter jurisdiction over this matter and hereby DENIES in its entirety Defendants' motion for summary judgment and DISMISSES the case without prejudice.

**II.   BACKGROUND**

Because Plaintiff is the non-moving party, the following allegations are taken from Plaintiff's submissions and will be assumed as true for purposes of the present motion.

Plaintiff is a California corporation in the business of producing and selling premium wines, with its principal place of business in Napa County, California. Compl. at 1. Defendants are engaged in the manufacture, marketing, distribution and sale of closures used for closing wine bottles. Id. at 2. These closures are non-agglomerated corks known by the trade name of Altec. Id.

Defendants marketed the Altec closures to Plaintiff and a number of other wineries. Id. at 3. According to Plaintiff, Defendants' advertising materials made the following representations regarding the Altec closures: (1) Altec closures prevent cork taint[2]; (2) the closures were "without risk of cork taint"; (3) the closures offered "near perfect protection against cork taint"; (4) there is "no cork taint" with these closures; (5) the Altec closure is "the only pure cork which is capable of relieving wine producers from the risk of cork taint"; and (6) the closures were free from defects and of a type and quality fit for

---

[2] "[C]ork taint is generally described in the wine industry as a musty, moldy, wet cardboard odor in bottled wine. Most cork taint is associated with 2, 4, 6-trichloranisole ("TCA"). TCA is created when naturally occurring molds metabolize chlorophenols, which can be present in natural cork in certain circumstances." Compl. at 5.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

bottling premium quality wine.  Compl. at 3.  Additionally, Bill
Crawford and Gary Leonard, Plaintiff's president and purchasing
manager, respectively, were told specifically by representatives
of Sabaté that the Altec closure would prevent cork taint.  Id. at
3-4.

Based on these representations, Plaintiff purchased
approximately 287,000 Altec closures from Defendants in June of
2000 for a total purchase price of roughly $33,000.  Id. at 4.
Plaintiff used the Altec closures in bottling several of its wines
in July, August, and October of 2000.  Id.

According to Plaintiff, it began to develop concerns with the
Altec closures in early 2001, which Plaintiff immediately
expressed to Defendants.  Id.  Defendants appeased these concerns
by again representing that the Altec closures would perform as
advertised.  Id.

In the fall of 2001 and spring of 2002, Plaintiff received
reports that a high percentage of its wines bottled with Altec
closures were suffering from cork taint.  Id.  As a result,
Plaintiff was forced to recall a significant number of these wines
from its buyers at a great expense to Plaintiff.  Id. at 4-5.
Plaintiff alleges that the recall is attributable to the Altec
closures being defective and the presence of an unacceptable level
of TCA in the closures.  Id. at 6.

In December of 2003, Plaintiff brought suit in The Superior
Court for the County of Napa, California against Defendants
alleging eight causes of action:  (1) breach of contract; (2)
breach of express warranty; (3) breach of implied warranty; (4)
fraud; (5) negligent misrepresentation; (6) negligence;

3

United States District Court

For the Northern District of California

(7) unfair business practices under California Business and Professions Code section 17200 et seq.; and (8) strict liability. Compl. at 1.  Defendants timely removed the action to Federal Court based on federal question jurisdiction, under 28 U.S.C. § 1441(b).  Notice of Removal at 2.

Defendants now move the Court to grant partial summary judgment.  Defendants' Memorandum in Support of Motion for Partial Summary Judgment at 25 ("Defs' Mem.").  For reasons that will be discussed more fully below, the Court hereby DENIES Defendants' motion and DISMISSES the case without prejudice.

## III.  **LEGAL STANDARD**

The federal courts have "original jurisdiction over all civil actions arising under the Constitution, laws or treaties of the United States."  28 U.S.C. § 1331.

A Federal Court may examine the question of subject matter jurisdiction sua sponte.  See Steel Company v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998).  Federal Courts must normally determine issues of subject matter jurisdiction before considering a case on its merits.  Id.  When a court lacks jurisdiction, the "only function remaining to the court is that of announcing the fact and dismissing the cause."  Id., quoting Ex parte McCardle, 7 Wall. 506, 514 (1868).

## IV.  **DISCUSSION**

Defendants contend that this Court has jurisdiction to hear this case under federal question jurisdiction, pursuant to 28 U.S.C. § 1331.  Defendants' Reply Brief in Support of Partial

4

Summary Judgment at 1-2 ("Defs' Reply").[3]  Specifically, Defendants contend that The Convention on Contracts for the International Sale of Goods ("CISG"), a federally-adopted treaty, applies wherever the buyer and seller of goods are from different countries, which have adopted CISG, and the parties have not opted out of CISG.  Id.  Defendant contends that the seller (Sabaté France) is a French company and the buyer (Plaintiff) is a U.S. company and that both countries have adopted CISG.  Id.  Finally, Plaintiff contends that the parties did not opt out of CISG.  Id. at 2.

Plaintiff contends that Defendants have not demonstrated that CISG applies to this case.  Plaintiff's Memorandum in Opposition to Sabaté Inc.'s Motion for Summary Judgment at 9-10 ("Pl.'s Mem.").

CISG "sets out substantive provisions of law to govern the formation of international sales contracts and the rights and obligations of the buyer and seller."  U.S. Ratification of 1980 United Nations Convention on Contracts for the International Sale of Goods:  Official English Text, 15 U.S.C. App, Public Notice 1004.  CISG applies to "sales contracts between parties with their places of business in different countries bound by the Convention, provided the parties have left their contracts silent as to the applicable law."  Id.

This case turns on the determination of Defendants' place of

_____

[3] Defendants removed to Federal Court on the basis of federal question jurisdiction.  Diversity does not exist because Plaintiff and Sabaté USA are citizens of California.  Therefore, if there is no federal question at issue the Court will deny the motion and dismiss the case.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

business.  Again, CISG applies only when a contract is "between parties whose places of business are in different States." 15 U.S.C. App. Art. 1 (1)(a).  "If a party has more than one place of business, the place of business is that which has the closest relationship to the contract and its performance, having regard to the circumstances known to or contemplated by the parties at any time before or at the conclusion of the contract."  15 U.S.C. App. Art. 10(a).

Defendants contend that Sabaté SAS was a French entity, that Sabaté USA had "limited involvement" in the transaction, and never took possession of the Altec closures, which were shipped from France directly to Plaintiff.  Defs' Mem. at 3-4.

The crucial question is from where the representations about the product came.  The Court took up this issue in Asante Technologies, Inc. v. PMC-Sierra, Inc., 164 F.Supp. 2d 1142 (N.D. Cal. 2001), a case on which Defendants heavily rely.  In Asante Technologies, the plaintiff, a Delaware corporation, sued the defendant, a Delaware corporation which conducted the bulk of its business in and from Canada.  Id. at 1144-1145.  The plaintiff purchased the defendant's product through the defendant's authorized and nonexclusive U.S. distributor.  Id. at 1145, 1148.

The Court in Asante Technologies determined that CISG applied to the sales contracts based on the particular facts of the case. Id. at 1149.  The District Court found it significant that (1) the plaintiff did not allege that the U.S. distributor made any representations about the product, (2) the plaintiff did not mention the distributor in its complaint, (3) the plaintiff's claims concerned breaches of representations by the defendant from

6

Canada, (4) the products were manufactured in Canada, (5) the plaintiff corresponded with the defendant at the defendant's Canadian address and (6) the plaintiff did not "identif[y] any specific representations or correspondence emanating" from the defendant's U.S. branch. Id. The Court concluded that the U.S. contacts between the plaintiff and the defendant were "not sufficient to override the fact that most if not all of the defendant's representations regarding the technical specifications of the products emanated from Canada." Id.

The Court finds that the instant case presents a crucially different set of facts from those discussed in Asante Technologies. Looking at Plaintiff's exhibits, the Court notes that a letter proposing a sale of Altec closures to Plaintiff is printed on Sabaté USA letterhead, which gives a San Francisco, California address and telephone number. Compl., Ex. B at 1. In relevant part, the letter, which is addressed to Gary Leonard, Purchasing Manager for McDowell Valley Vineyards, reads:

> After talking with you the other day I could easily sense your frustration with corks and cork taint. As you know our Altec© corks are doing very well in solving the two biggest concerns when it comes to cork, Cork [sic] leakage and cork taint...Due to our eagerness to work with you, below you can find a price structure specifically formulated for MCDOWELL [sic] and the volumes you are currently doing.

Id.

The invoice appears on Sabaté USA letterhead and gives a Napa, California address and telephone number. Compl., Ex. C at 1. Another letter regarding "your recent order" appears on Sabaté USA letterhead. Id. at 2. Finally, some advertising literature, which is printed on Sabaté USA letterhead and gives a San Francisco, California address and telephone number, gives a list

7

of California wineries using Altec closures and at one point states:  "For more information and a personal demonstration, call [a San Francisco, California telephone number]."  <u>Id</u>., Ex. A at 1-3, 5, 7.[4]  Also, according to Plaintiff, the corks were delivered to "C-Line shipping in the U.S. who maintains a warehouse for Sabaté USA...near Sabaté USA's Napa office."  Pl.'s Mem. at 10.

Finally, according to Plaintiff, "after Sabaté USA was put on notice that McDowell has had [<u>sic</u>] some problems with Altec in 2001, Sabaté USA did in fact take possession of the corks in question" and that "Sabaté USA initiated this latter action and was not directed by Sabaté S.A.S."  <u>Id</u>.

The central issue in the instant case, as in <u>Asante Technologies</u>, is from where the representations about the product came.  Based on the evidence submitted by the parties, the Court finds that the representations regarding the specifications of the product - both in number and in substance - came largely, if not entirely, from California.

Because Defendants' place of business, taking into account the circumstances known or contemplated by the parties before and at the conclusion of the contract, is in California, the parties are not from different states and therefore CISG does not apply. Because CISG does not apply, there is no federal jurisdiction over the case.  Diversity does not exist because Plaintiff and Sabaté USA are citizens of California.  Accordingly, the Court will deny the motion for summary judgment and dismiss the case.

---

[4] The Court notes that some of the advertising literature indicates that central control over Sabaté's international entities resides in France.  <u>Id</u>. at 9-15.

8

United States District Court
For the Northern District of California

## V.   CONCLUSION

The Court finds that the majority of the representations about the product came from California.  Therefore, under CISG, the parties' places of business are in the same state.  CISG is, therefore, inapplicable to the sale and consequently the Court lacks jurisdiction over the case.  Accordingly, Defendants' motion for summary judgment is DENIED in its entirety.  The Court DISMISSES the case without prejudice.

If the parties refile with the Court, they will be obliged to establish that the Court has jurisdiction over the matter.


IT IS SO ORDERED.

Dated: November 1, 2005


_____
UNITED STATES DISTRICT JUDGE

9